**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────

REGGIE MCFADDEN,

                              Plaintiff,

              v.                                              No. 12-CV-685
                                                              (GTS/CFH)
J. FRIEDMAN, et al.,

                              Defendants.

───────────────────────────────

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**


**APPEARANCES:**                              **OF COUNSEL:**

REGGIE MCFADDEN
Plaintiff <u>Pro</u> <u>Se</u>
96-A-5179
Attica Correctional Facility
Box 149
Attica, New York 14011

HON. ERIC T. SCHNEIDERMAN              RYAN W. HICKEY, ESQ.
Attorney General for the              Assistant Attorney General
    State of New York
The Capitol
Albany, New York 12224-0341
Attorney for Defendants


**REPORT-RECOMMENDATION AND ORDER**[1]

        Plaintiff <u>pro</u> <u>se</u> Reggie McFadden, an inmate who was, at all relevant times, in the

custody of the New York Department of Corrections and Community Supervision

───────────────────

        [1]  This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636 (b) and N.D.N.Y.L.R. 72.3 (c).

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that: (1) defendant Jill Friedman denied him access to the commissary, issued him false misbehavior reports, conducted unauthorized cell searches, and took or destroyed his property, in violation of the First Amendment (Dkt. No. 38 ("Amended Compl.") at 8-11); (2) defendant Berndt Leifeld issued false misbehavior reports in retaliation for plaintiff filing grievances, in violation of the First Amendment (id. at 12-13); (3) defendant Daniel Geisler issued a false misbehavior report in retaliation for plaintiff's filing grievances, in violation of the First Amendment (id. at 14); (4) defendant Keith Filkins harassed and threatened plaintiff by issuing a false misbehavior report to plaintiff in retaliation for plaintiff filing a grievance against defendant Leifeld and other correctional staff, in violation of the First Amendment (id. at 14-15); and (5) defendants William Brown and Brian Fischer are liable as supervisors for the misconduct of defendants Friedman, Leifeld, Geisler, and Filkins (id. at 19-31, 32-34, 42-53, 55-57).

At all relevant times, plaintiff was an inmate at Eastern Correctional Facility ("Eastern"). Plaintiff commenced this action on April 25, 2012, seeking $2.7 million dollars in compensatory and punitive damages, together with attorneys' fees and costs. Dkt. No. 1 at 20. Plaintiff filed a motion to amend his complaint on August 30, 2013. Dkt. No. 32. The Court granted plaintiff's motion as to some claims, denied the motion as to others, and directed that the amended complaint supersede and replace the previously-filed complaint. Dkt. No. 37 at 16-17. Plaintiff filed an amended complaint on January 17, 2014. Dkt. No. 38. Presently pending is defendants' first motion for summary judgment pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56(a). Dkt. No. 66. Plaintiff opposed the motion. Dkt. Nos. 78, 85.

# I. Background

## A. July 1, 2009 Commissary Buy

On July 1, 2009, plaintiff was placed on a one-day medical confinement due to a minor medical condition. Amended Compl. at 8. Plaintiff's medical confinement status allowed him to receive meals in his cell and also excused him from attending recreation activities and his assigned program. Id. Plaintiff's July 1, 2009 medical excuse permit for did not specify any additional changes or restrictions. Id.

Defendant Friedman conducted final rounds at the conclusion of her shift on July 1, 2009 at approximately 2:30 p.m. Declaration of Jill Friedman ("Friedman Decl.") ¶ 6. At that time, plaintiff demanded to be taken to the commissary. Id. ¶ 7. Friedman states that plaintiff asked if "keep-lock" inmates were allowed to go to the commissary. Id. ¶ 9. She informed plaintiff that inmates placed on a disciplinary keep-lock lose their commissary privileges. Id. She was not aware at the time that plaintiff was keep-locked on the orders of medical staff. Id. Plaintiff alleges that Friedman told him that she was not allowing him to go to the commissary because he had written a grievance complaint on her "home girl," Officer Jamil.[2] Amended Compl. at 9.

An inmate on a medical keep-lock may not leave his cell to go to the commissary, but may request a "make-up" commissary buy for another time. Friedman Decl. ¶¶ 10-11. Plaintiff never requested a "make-up" commissary buy day. Id. ¶ 12. Plaintiff filed a grievance complaint against Friedman on July 3, 2009. Amended Compl. at 9. A hearing

---

[2] This Court denied plaintiff's motion to amend his complaint to add claims against Officer Jamil, by Decision and Order dated January 17, 2014. Dkt. No. 37. Accordingly, Officer Jamil is not a defendant in this action.

on the July 3, 2009 grievance complaint took place on July 14, 2009.  Id.  Plaintiff alleges

that he appealed the matter to defendant Brown on July 17, 2009 and July 20, 2009.  Id. at

19-20.  Brown responded to plaintiff's appeal on August 25, 2009.  Id.  Plaintiff also claims

that he appealed the matter to defendant Fischer on August 20, 2009, and Fischer

responded on or about September 23, 2009.  Id. at 42.


### B.  July 14, 2009 Misbehavior Report and Contraband Receipt

On July 14, 2009, defendant Friedman was conducting regular rounds when she

heard a radio playing loudly from plaintiff's cell.  Friedman Decl. ¶¶ 15-16.  Upon inspection,

Friedman saw that plaintiff was not in his cell.  Id. ¶ 16.  Eastern's facility policy dictates that

inmates must turn off and unplug their radios while they are not present in their cells.  Id. ¶

17.  Previously, Friedman had counseled plaintiff regarding this policy and had instructed

him to turn off his radio when he left his cell.  Id. ¶ 18.  Friedman issued plaintiff a

misbehavior report for violation of Standards of Inmate Behavior 104.13 (Creating a

Disturbance) and 106.10 (Refusing a Direct Order).  Id. ¶ 19, Exh. A.  Friedman also

confiscated plaintiff's radio, issued him a contraband receipt, and placed the radio in the

West Wing Court Office.  Id. ¶¶ 19-20, Exh. B.

Plaintiff claims that Friedman's July 14, 2009 misbehavior report is false because he

did not leave his radio playing loudly that day.  Amended Compl. at 9-10.  He also claims

that Friedman stole two of his family photographs from his cell and did not note the

photographs on the contraband receipt issued to him.  Id. at 10.  Plaintiff alleges that

Friedman issued the false misbehavior report, and confiscated plaintiff's photographs, in

retaliation for the grievance complaint that plaintiff filed against her on July 3, 2009.  Id. at 9-10.  Friedman denies that she confiscated any photographs from plaintiff's cell.  Friedman Decl. ¶ 23.

Plaintiff was found guilty of violating Standard of Inmate Behavior 104.13 (Creating a Disturbance) at his Tier I Disciplinary Hearing regarding the July 14, 2009 misbehavior report.  Friedman Decl. ¶ 22; Declaration of Berndt Leifeld ("Leifeld Decl.") ¶ 32.  Leifeld, who served as a hearing officer at plaintiff's disciplinary hearing, counseled and reprimanded plaintiff on Eastern's policy on radio use.  Friedman Decl. ¶ 22; Leifeld Decl. ¶ 33, Exh. C.  Plaintiff alleges that he appealed this matter to defendant Brown on both July 17, 2009 and July 20, 2009, and Brown responded to the appeals on August 25, 2009.  Amended Compl. at 20-21.  Plaintiff also alleges that Brown responded to his appeal on July 20, 2009.  Id. at 23.  Plaintiff sent a letter regarding the incident to defendant Fischer on August 20, 2009, and Fischer responded on September 23, 2009.  Id. at 44.

### C.  October 8, 2009 Contraband Receipt

On October 8, 2009, plaintiff alleges that Friedman conducted an "unauthorized search" of plaintiff's cell and "stole" his personal fan.  Amended Compl. at 10-11.  He also alleges that Friedman vandalized his cell, pouring "soap powder, coffee, sugar, water, and . . . mayonnaise all over everything" in his cell.  Id. at 10.  Plaintiff alleges that Friedman acted in retaliation for the grievance complaints he had previously filed against her.  Id.

Friedman states that she was conducting regular rounds at 1:50 p.m. on October 8, 2009 when she observed a lamp and linens hanging from a clothesline in plaintiff's cell.  Friedman Decl. ¶ 26.  According to Eastern's facility policy, inmates may not hang their

clothslines until after 4:00 p.m. and may not hang lamps from their clotheslines. Id. ¶ 27.

Therefore, Friedman confiscated the clotheslines and the linens and issued a contraband

receipt to plaintiff. Id. ¶ 28. Friedman states that her actions were performed based on

"facility policy and protocol[,]" and that she "did not threaten, harass, or retaliate against

Plaintiff in any way at any time." Id. ¶ 29. Plaintiff alleges that the contraband receipt is

false because he never owned a clothesline during his time at Eastern. Amended Compl. at

11.

Plaintiff alleges that he sent a "grievance letter" to defendant Brown on October 8,

2009, complaining about Friedman's conduct. Amended Compl. at 21. After plaintiff sent

the letter to Brown, an investigation took place on October 19, 2009. Id. at 22. Plaintiff also

alleges that he sent a letter regarding the incident to defendant Fischer on October 8, 2009,

and Fischer responded on February 17, 2010. Id. at 46. Brown received plaintiff's letter

and forwarded it to subordinate staff for investigation. Declaration of William Brown ("Brown

Decl.") ¶ 15. On December 31, 2009, Brown's office sent plaintiff a copy of defendant

Leifeld's response to the grievance regarding the October 8, 2009 incident. Id.


### D. October 20, 2009 Misbehavior Report

On October 20, 2009, plaintiff alleges that defendant Leifeld issued a false

misbehavior report against him, claiming that Leifeld had searched plaintiff's cell and

confiscated a pair of stolen headphones. Amended Compl. at 12. Plaintiff alleges that the

misbehavior report is false because Leifeld did not conduct a search and, further, plaintiff

did not own any headphones at the time of the alleged search. Id.

Leifeld states that, on October 20, 2009, plaintiff gave him a pair of broken

headphones and accused another officer of cutting one of the wire leads on the headphones. Leifeld Decl. ¶ 5. Leifeld inspected the headphones, along with facility records, and found that (1) the headphones were the "Unitone digital" brand; (2) the headphones were identical to the type of headphones sold in Eastern's commissary; (3) there was no identification number on the headphones; (4) plaintiff did not have a permit for the headphones; and (5) there were no records of plaintiff's purchase of the headphones from Eastern's commissary. Id. ¶¶ 8-11. Inmates must have a property permit for headphones pursuant to Directive 2733. Id. ¶ 6. Accordingly, Leifeld determined that plaintiff possessed the headphones illegally and issued him a misbehavior report for violating Standards of Inmate Behavior 116.13 (Possession of Stolen Property). Id. ¶ 12. Leifeld also determined that plaintiff's claim that an officer had damaged the headphones was meritless and placed the headphones in the West Wing Court Contraband Locker. Id. ¶¶ 13-14. Leifeld states that his actions were based on "facility policy and protocol." Id. ¶ 15.

Plaintiff states that he filed a grievance complaint regarding the headphones incident on October 23, 2009, and sent the grievance complaint to defendants Brown and Fischer. Amended Compl. at 24. Brown assigned Captain L. Pingotti to investigate the incident, and Captain Pingotti issued a memorandum regarding his investigation on December 5, 2009 Id. at 24-25. Plaintiff alleges that Brown never responded to plaintiff's October 23, 2009 grievance. Id. at 24. Plaintiff also alleges that he appealed the incident to Fischer on December 17, 2009. Id. at 48.

Defendant Fischer received a letter regarding this incident on November 3, 2009. Declaration of Brian Fischer ("Fischer Decl.") ¶ 8. The letter was addressed to defendant

Brown, with a copy addressed to Fischer.  Id. ¶ 8, Exh. B.  Deputy Commissioner Leclaire responded to the letter on November 12, 2009, referring plaintiff to the grievance office at Eastern to resolve his complaint.  Id.

### E.  December 5, 2009 Misbehavior Report

On December 5, 2009, plaintiff alleges that he dropped "his electrical trimmers[,]" causing the battery from the trimmers to roll outside of his cell.  Amended Compl. at 55.  He then placed a mirror outside of his cell bars in order to locate the battery.  Id.  Plaintiff alleges that defendant Filkins walked by, "snatch[ed]" the mirror from his hand, called plaintiff a racial slur, threatened him for filing grievances against other officers, and stated, "we skin heads are not going to stand for it."  Id. at 55-56.

Officer Filkins states that, on December 5, 2009, he observed a mirror propped up against a book outside of plaintiff's cell door.  Declaration of Keith Filkins ("Filkins Decl.") ¶ 6.  According to Standards of Inmate Behavior Rule 116.11, inmates are not allowed to alter their personal property to extend outside of their cell doors.  Id. ¶ 7.  As Filkins approached plaintiff's cell, plaintiff disassembled the mirror and book set-up and moved the mirror inside his cell.  Id. ¶ 8.  Filkins ordered plaintiff to give him the mirror four times, and plaintiff refused.  Id. ¶¶ 9-10.  After the fourth refusal, Filkins told plaintiff that he was keep-locked and gave plaintiff a fifth order directing him to hand over the mirror.  Id. ¶ 10.  Plaintiff refused again, at which point Filkins told plaintiff that he would continue making his rounds and would return after to confiscate the mirror.  Id. ¶ 11.  As Filkins walked away from plaintiff's cell, plaintiff placed the mirror outside of his cell, and Filkins confiscated it and placed it in the West Wing Court Office.  Id. ¶ 12.

Filkins notified the Area Sergeant of the incident, and issued plaintiff a misbehavior report for violating Standards of Inmate Behavior Rules 106.10 (Refusal to obey a direct order), 107.10 (Interference with an employee), and 116.11 (Tampering with personal property).  Filkins Decl. ¶ 13.  Filkins states that he issued the misbehavior report based on "policy and protocol[,]" and denies that he retaliated against plaintiff for grievances filed against other DOCCS staff.  Id. ¶¶ 14, 16.  He also denies threatening or harassing plaintiff. Id.  At a Tier II disciplinary hearing, plaintiff pleaded guilty to violating Standards of Inmate Behavior Rule 116.11 (Tampering with personal property).  Id. ¶ 15.

Plaintiff sent a grievance regarding this incident to defendant Brown on or about December 6, 2009.  Amended Compl. at 33.  Plaintiff also alleges that he appealed the matter to defendant Fischer on January 13, 2010, and Fischer responded on March 3, 2010.  Id. at 56.

### F.  December 27, 2009 Misbehavior Report

On December 27, 2009, plaintiff alleges that defendant Leifeld told him to move to a different area at Eastern without providing him with an institutional pass or an escort officer. Amended Compl. at 12.  Plaintiff contends that Leifeld's order violated Eastern's movement regulations and effectively forced plaintiff to disobey the regulations.  Id. at 12-13.  Officer Geisler found plaintiff in the bathroom and issued him a misbehavior report.  Id. at 14. Plaintiff alleges that Leifeld and Geisler's misbehavior report is false because it states that plaintiff refused to return to his housing unit at Geisler's direction.  Id.  He claims that Leifeld ordered him to a different area of the prison for the purpose of issuing him a false misbehavior report for his movement outside of Eastern's regulations, and that he did not

immediately obey Geisler because he was using the bathroom.  Id. at 13-14.  He further

claims that Leifeld acted in retaliation for past grievances filed against him and other staff

members.  Id. at 13.

Leifeld claims that, on December 27, 2009, he asked Geisler to instruct plaintiff to

meet Leifeld in the West Wing Court.  Leifeld Decl. ¶ 17.  Leifeld states that he asked

plaintiff to report to the West Wing Court during an "open movement" period, during which

inmates are allowed to move about the facility without passes or escorts.  Id. ¶¶ 18, 20.  On

December 27, 2009, there was an open movement period immediately after breakfast,

lasting from approximately 8:20 a.m. to 8:35 a.m.  Id. ¶¶ 19, 22.  Plaintiff failed to report to

the West Wing Court during the open movement period despite the fact that Mess Hall #1,

where plaintiff ate breakfast, and the West Wing Court "are about a two-minute walk apart."

Id. ¶¶ 21, 23.  After searching other areas of Eastern for plaintiff, Leifeld instructed Geisler

to search for plaintiff.  Id. ¶¶ 23-24.  Geisler located plaintiff in the shower area at

approximately 8:45 a.m and reported to Leifeld that plaintiff refused to be escorted back to

his housing unit, and only complied after Geisler signaled other officers for assistance.  Id.

¶¶ 24-25.  Plaintiff was escorted back to his housing unit and placed on keep-lock status.

Id. ¶ 26.  Leifeld issued plaintiff a misbehavior report for violations of Standards of Inmate

Behavior 106.10 (Refusal to obey a direct order); 109.10 (Out of place); 107.10

(Interference); and 109.12 (Staff direction to movement).  Id. ¶ 27.

Plaintiff alleges that he sent a letter to defendants Brown and Fischer regarding the

allegedly false misbehavior report on December 29, 2009.  Amended Compl. at 26.  Plaintiff

claims that neither Brown nor Fischer have responded to that letter.  Id.  Plaintiff also filed a

grievance on December 31, 2009.  Id. at 28.  Brown replied to the grievance on January 14,

2010.  Id.

Following a Tier II disciplinary hearing held on January 14, 2010, plaintiff was found guilty of violating Standard of Inmate Behavior 106.10 (Refusal to obey a direct order). Leifeld Decl. ¶ 28.  Brown states that he received both the original grievance and the appeal of the disciplinary hearing determination and forwarded both to the Deputy Superintendent of Security.  Brown Decl. ¶¶ 11-14.  The Deputy Superintendent of Security affirmed the hearing officer's finding on January 15, 2010.  Leifeld Decl. ¶ 29.

## II.  Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it is supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a), (c).  The moving party has the burden to show the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial, and must do more than show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  For a court to grant a motion for summary judgment, it must be

apparent that no rational finder of fact could find in favor of the non-moving party.  Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

## B.  First Amendment Retaliation Claims

Plaintiff argues that: (1) defendant Friedman denied plaintiff access to the commissary, issued plaintiff false misbehavior reports, conducted unauthorized cell searches, verbally threatened plaintiff, and took or destroyed plaintiff's property in retaliation for plaintiff filing grievances in violation of the First Amendment; (2) defendant Leifeld issued plaintiff false misbehavior reports in retaliation for plaintiff's filing grievances, in violation of the First Amendment; (3) defendant Geisler issued plaintiff a false misbehavior report in retaliation for plaintiff's filing grievances, in violation of the First Amendment; and (4)

-12-

defendant Filkins harassed and threatened plaintiff, and issued a false misbehavior report to plaintiff in retaliation for plaintiff's filing grievances, in violation of the First Amendment. Amended Compl. at 9-15.

Courts are to "approach [First Amendment] retaliation claims by prisoners 'with skepticism and particular care[.]'" See, e.g., Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema, N. A., 534 U.S. 506 (2002)). A retaliation claim under section 1983 may not be conclusory and must have some basis in specific facts that are not inherently implausible on their face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); South Cherry St., LLC v. Hennessee Group LLC, 573 F.3d 98, 110 (2d Cir. 2009). "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (quoting Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004), overruled on other grounds by Swierkiewicz, 534 U.S. 506 (2002)). If the plaintiff meets this burden, the defendants must show, by a preponderance of the evidence, that they would have taken the adverse action against the plaintiff "even in the absence of the protected conduct." Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." See Barclay v. New York, 477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007). In order to prove an adverse action,

a plaintiff must show that the defendant's "'retaliatory conduct . . . would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . . Otherwise, the retaliatory act is simply <u>de</u> <u>minimis</u>, and therefore outside the ambit of constitutional protection.'" <u>Roseboro v. Gillespie</u>, 791 F. Supp. 2d 353, 366 (S.D.N.Y. 2011) (quoting <u>Dawes</u>, 239 F.3d at 292-93).

### 1. Friedman

### a. July 1, 2009 Commissary Buy

Plaintiff claims that, on July 1, 2009, Friedman prevented him from traveling to the commissary on his scheduled day and stated to plaintiff: "this is only the beinning [sic] of your sorrows, because you wrote a grievance complaint on my home girl[.]" Amended Compl. at 9. Where plaintiff refers to Friedman's "home girl," he means corrections officer Jamil. <u>Id.</u>

Plaintiff has shown that he engaged in constitutionally protected conduct insofar as he claims to have filed a grievance against Jamil. <u>See</u> <u>Graham v. Henderson</u>, 89 F.3d 75, 80 (1996). However, he has failed to show that he suffered an adverse action, and he has also failed to show a causal connection between his protected speech and the alleged adverse action.

At the outset, "it is difficult to establish one defendant's retaliation for complaints against another defendant." <u>Hare v. Hayden</u>, No. 09 Civ. 3135(RWS), 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) (citing <u>Wright v. Goord</u>, 554 F.3d 255, 274 (2d Cir. 2009)). Plaintiff must show "a genuine issue of material fact that the protected conduct was a

substantial or motivating factor in his discipline." Graham, 89 F.3d at 81. Here, plaintiff does not allege that he filed any grievances or complaints against Friedman. Although he claims that Friedman did not allow him to go to the commissary because he had previously filed a grievance against Officer Jamil, Friedman states in her affidavit that July 1, 2009 was the first day she encountered plaintiff, and that she had no knowledge of any previous grievances filed by him against Officer Jamil. Friedman Decl. ¶ 14. As plaintiff has provided no evidence establishing why Friedman would file a false misbehavior report against him on Jamil's behalf beyond a conclusory belief that the two officers are friends, he has failed to present a genuine issue of material fact as to a causal connection between his protected speech and being denied his commissary buy day. See Ciaprazi v. Goord, No. 9:02-CV-915 (GLS/DEP), 2005 WL 3531464, at *9 (N.D.N.Y. Dec. 22, 2005) (entering summary judgment on retaliation claim where the plaintiff cited only past grievances filed against corrections officers other than the officer who disciplined the plaintiff); see also Alicea v. Maly, No. 9:12-cv-203 (MAD/TWD), 2015 WL 4326114, at *14 (N.D.N.Y. July 14, 2015); Guillory v. Ellis, No. 9:11-CV-600 (MAD/ATB), 2014 WL 4365274, at *18 (N.D.N.Y. Aug. 29, 2014). Even if the Court were to find that a causal connection did exist, plaintiff's claim would still fail because the loss of one visit to the commissary is de minimis and does not amount to an adverse action. See Gantt v. Lape, No. 9:10-CV-0083 (GTS/TWD), 2012 WL 4033729 (N.D.N.Y. July 31, 2012) (finding no adverse action where the plaintiff lost commissary privileges for thirty days).

Accordingly, there is no genuine issue of material fact as to Friedman's actions on July 1, 2009, and it is recommended that defendants' motion on this ground be granted.

### b. July 14, 2009 Misbehavior Report and Contraband Receipt

Plaintiff alleges that he filed a grievance against Friedman on July 3, 2009, in response to her actions on July 1, 2009. Amended Compl. at 10. He claims that Friedman performed an unauthorized search of his cell, stole two photographs, and issued a false misbehavior report and contraband receipt. Id.

Plaintiff's grievance against Friedman is constitutionally-protected conduct. See Graham, 89 F.3d at 80. As to the second prong, whether the conduct complained of amounts to an adverse action, routine cell searches are "an integral part of prison life[.]" Jones v. Harris, 665 F. Supp. 2d 384, 394 (S.D.N.Y. 2009) (citing Hudson v. Palmer, 468 U.S. 517, 527-28 (1984)). As such, "neither the United States Supreme Court nor the Second Circuit has ever held that a cell search can be the basis of a First Amendment retaliation claim." Id. at 398. Further, any property seized during cell searches or disarray caused by the search must be "unusually punitive" or "out of the ordinary" in order to show that a plaintiff has suffered more than a de minimis injury. Id. at 398. A plaintiff must show that a prison official "'intentionally'" or "'deliberately' lost or destroyed his property[.]" Key v. Toussaint, 660 F. Supp. 2d 518, 525 (S.D.N.Y. 2009) (quoting Gill v. Frawley, No. 9:02-CV-1380, 2006 WL 1742738, at *5 & nn.25-26 (N.D.N.Y. June 22, 2006)).

Friedman states that she took a radio from plaintiff's cell because she had discovered the radio playing while plaintiff was not present in his cell, which is a violation of Eastern's policy. Friedman Decl. ¶¶ 17, 19. She denies taking any personal photographs from plaintiff's cell, id. ¶ 23, and plaintiff has not set forth any proof to show that she confiscated the photographs. Plaintiff attaches to his supplemental response to defendants' motion a form listing an inventory of his personal belongings he had upon his arrival at

Eastern.  Dkt. No. 83 at 28.  Although plaintiff claims that the form lists his personal photographs, it does not.  See id. at 9, 28.  As plaintiff failed to show that Friedman intentionally lost or destroyed his photographs, he has failed to show that he suffered an adverse action.

Plaintiff has also failed to allege facts tending to establish a First Amendment retaliation claim based on Friedman's issuance of a misbehavior report based on plaintiff's improper use of his radio.  Although plaintiff's filing of a grievance against Friedman is constitutionally-protected speech, plaintiff has failed to show that he suffered an adverse action insofar as he accuses Friedman of issuing a retaliatory false misbehavior.[3]  "'Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes adverse action for a claim fo retaliation.'"  Davis, 320 F.3d at 353.  At his Tier I hearing, plaintiff was "counseled and reprimanded" by the hearing officer.  Leifeld Decl. ¶ 33.  Plaintiff received no other penalty.  Id.  The penalty received by plaintiff is de minimis, and, therefore, is not an "adverse action."  See Monko v. Cusack, No. 9:11-CV-1218 GTS/TWD, 2013 WL 5441724, at *11 (N.D.N.Y.

_____

[3]  Plaintiff also requests that the Court preclude any evidence that Friedman had issued a prior direct order to plaintiff regarding the use of his radio when not in his cell.  Dkt. Nos. 83 at 12, 83-1 at 19.  He bases this request on the fact that the charge against him for violating Standard of Inmate Behavior 106.10 (Direct Order) was dismissed, yet Friedman states in her declaration that she had previously counseled plaintiff several times regarding proper radio use.  See Dkt. No. 83-1 at 19; Friedman Decl. ¶ 18.  Whether the charges were dismissed following a disciplinary hearing is not dispositive of whether or not Friedman's act of issuing the misbehavior report was retaliatory in nature.  Moreover, the Court understands Friedman's reference to prior counseling to refer to previous instances, other than the events of July 14, 2009.  Thus, the dismissal of the failure to obey a direct order charge from the July 14, 2009 misbehavior report, and the charge contained within that report, was not based upon earlier instances of radio misuse and resultant counseling.  Accordingly, plaintiff's request is denied.

Sept. 27, 2013) (finding that the penalty of "counseling and reprimand" was insufficient to establish adverse action).

Because plaintiff has failed to show that he suffered an adverse action on July 14, 2009, the undersigned need not determine whether there is a causal connection between plaintiff's protected conduct and Friedman's actions. Accordingly, there is no genuine issue of material fact as to Friedman's actions on July 14, 2009, and it is recommended that defendants' motion on this ground be granted.

### c. October 8, 2009 Contraband Receipt

Plaintiff alleges that, on October 8, 2009, in retaliation for "a number of grievances" filed against Friedman, Friedman performed an unauthorized search of plaintiff's cell, confiscated plaintiff's personal fan without issuing a contraband receipt, and issued a false contraband receipt claiming that plaintiff had a lamp hanging from a clothesline in his cell. Amended Compl. at 10-11. Plaintiff denies having a clothesline in his cell, and also alleges that, during Friedman's search of his cell, she "poured soap powder, coffee, sugar, water, and . . . mayonnaise all over everything in [his] cell." Id. at 10-11. Friedman states that, on October 8, 2009 at approximately 1:50 p.m., while conducting regular rounds, she observed a clothesline in plaintiff's cell with linens and a lamp hanging from it. Friedman Decl. ¶ 26. Pursuant to Eastern's policies, inmates may not hang lamps from clotheslines in their cells and, also, may not hang their clothesline until after 4:00 p.m. Id. ¶ 27. Thus, Friedman confiscated the clothesline and the linens and issued plaintiff a contraband receipt for those items. Id. ¶ 28.

As to the first prong of plaintiff's retaliation claim, plaintiff engaged in constitutionally-

protected activity insofar as he alleges that he had previously filed grievances against Friedman.  See Graham, 89 F.3d at 80.  As to the second prong, plaintiff claims that he suffered adverse actions by Friedman insofar as she confiscated his personal fan, vandalized his cell, and issued a false contraband receipt.  None of the injuries alleged are substantial enough to amount to an adverse action for purposes of a First Amendment retaliation claim.  Each alleged injury is considered in turn below.

As to the alleged confiscation of plaintiff's fan, this injury is not "substantial enough to deter legitimate grievances against prison officers."[4]  Salahuddin v. Mead, No. 95 Civ. 8581(MBM), 2002 WL 1968329, at *4 (S.D.N.Y. Aug. 26, 2002); c.f. Colon v. Coughlin, 58 F.3d 865, 872-73 (2d Cir. 1995) (finding adverse action where the plaintiff alleged that prison officials had planted contraband in his cell); Johnson v. Schiff, No. 9:11-CV-0531 (MAD/TWD), 2013 WL 5466218, at *13 (N.D.N.Y. Sept. 13, 2013) (Dancks, M.J.) (finding adverse action where defendants assaulted the plaintiff, denied him medical care and a legal phone call, and falsely accused him of making a verbal threat against an officer); Smith v. City of New York, No. 03 Civ. 7576(NRB), 2005 WL 1026551, at *3 (S.D.N.Y. May 3, 2005) (finding adverse action where prison officials destroyed multiple legal papers and nine hundred dollars worth of the plaintiff's personal property).  Moreover, the confiscation

---

[4] Insofar as plaintiff's amended complaint may be read as raising a claim for the confiscated property, in violation of his due process rights, the Fourteenth Amendment does not afford the prisoner a remedy.  Daniels v. Williams, 474 U.S. 327, 335 (1986). Further, it is well-settled that even where deprivation is intentional, there is no remedy available in federal court if there exists an adequate state court remedy.  See Hudson, 468 U.S. at 533.  As "New York in fact affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action pursuant to N.Y. Comp. Codes R. & Regs. tit. 7, § 1700.3(b)(4)[,]" there is no remedy in federal court for plaintiff's property damage. Davis v. New York, 311 F. App'x 397, 400 (2d Cir. 2009) (citation omitted).

of a fan would not "[deter] 'a similarly situated individual of ordinary firmness from exercising his constitutional rights.'" Davis, 320 F.3d at 353 (quoting Dawes, 239 F.3d at 493). Further, plaintiff's inventory form listing all of the personal items he had upon his arrival to Eastern fails to show that he owned a fan. See Dkt. No. 83-1 at 28. Upon investigation of plaintiff's claim that Friedman had issued a contraband receipt without listing the fan allegedly seized, defendant Leifeld responded that, after a full investigation, he found plaintiff's letter contained "unsupported statements and embellishments. Brown Decl. Exh. E. Leifeld also cited plaintiff's "continue[d] disregard for [Eastern's] simple rules and regulations[.]" Id. Superintendent Brown responded to plaintiff's complaint letter stating that there was "no tangible evidence to support [plaintiff's] allegations or employee misconduct." Id. Failure to issue a contraband receipt does not amount to a per se constitutional violation, as long as the disciplinary hearing that follows complies with due process. See generally Cook v. Terwillegar, No. 89 Civ. 0036 (KTD), 1990 WL 303592, at *3-4 (S.D.N.Y. Jan. 3, 1990) (finding that the plaintiff "was given adequate opportunity" to state the reasons why he thought a contraband receipt was falsified). Plaintiff's claim that Friedman confiscated his personal fan without issuing a contraband receipt was fully investigated within the facility and that claim was found to lack merit. Further, Friedman's alleged confiscation of plaintiff's fan did not chill plaintiff's First Amendment rights, as he filed a grievance against Friedman that same day. As such, he has failed to show that he suffered an adverse action sufficient to amount to a constitutional violation insofar as he claims that Friedman took his personal fan in retaliation for grievances filed against her.

As to Friedman's vandalizing of plaintiff's cell, prisoners are to understand that, as part of a cell search, there may be "trashing" of their cells and seizure of their property. See

-20-

Jones, 665 F. Supp. 2d at 398 (finding no adverse action where the plaintiff failed to show that a random cell search, subsequent seizure of personal items, and "trashing" of the plaintiff's cell was not out of the ordinary).  Still, the retaliatory destruction of a prisoner's personal property can be sufficient to establish an adverse action, Smith, 2005 WL 1026551, at *3, however, a plaintiff must show that the search was "unusually punitive" and "out of the ordinary."  Jones, 665 F. Supp. 2d at 398.

Plaintiff has shown that he had filed past grievances against Friedman.  Amended Compl. at 4.  He also claims that, approximately three months prior to the alleged destruction of his property, Friedman stated: "I am going to make you wish you never wrote a grievance on me."  Id. at 9.  He also presents a sworn affidavit from an inmate stating that plaintiff's cell looked as though a "hurricane" has come through and there were "food and clothes . . . every where [sic], with stuff poured all over them."  Dkt. No. 83-1 at 35.  As a result of this alleged conduct, plaintiff filed a grievance against Friedman, and subsequently received a memorandum from defendant Leifeld, dated October 19, 2009, stating that he investigated plaintiff's complaint about Friedman's actions "found no tangible evidence to support [plaintiff's] accusations of employee misconduct."  Dkt. No. 83-1 at 54.  The memorandum also stated that plaintiff's letter regarding Friedman's actions contained "unsupported statements and embellishments."  Id.  Friedman states that she did not "threaten, harass, or retaliate against Plaintiff in any way" on October 8, 2009.  Friedman Decl. ¶ 29.  Plaintiff claims that Friedman performed a cell search and left his cell in a state of disarray.  Because some level of disorder is to be expected in prison cell searches, plaintiff has failed to allege any facts by a reasonable fact-finder could conclude that Friedman's search was unusually punitive or out of the ordinary.  Cf. Smith, 2005 WL

1026551, at *1-3 (finding that the plaintiff's claim that his legal papers and personal property were destroyed was sufficient to establish adverse action and defeat a summary judgment motion where "plaintiff lost his copies of numerous motions drafted by his lawyer, along with his copy of his grand jury minutes[,]" along with "nine hundred dollars worth of personal property.").

Finally, addressing plaintiff's allegation that Friedman issued a false contraband receipt relating to the clothesline, plaintiff fails to allege that he received any punishment or reprimand arising out of the seizure of contraband. As such, even if plaintiff were issued a false contraband receipt, the injury is de minimis and insufficient to show that he suffered an adverse action. See Pledger v. Hudson, No. 99 Civ.2167LTSTHK, 2005 WL 736228, at *5 (S.D.N.Y. Mar. 31, 2005). Plaintiff further argues in his supplemental response that Friedman's statement that plaintiff hung his clothesline in a manner not comporting with Eastern's policies is false because Eastern does not have such a policy against hanging clotheslines prior to 4 p.m. Dkt. No. 83 at 16; see Friedman Decl. ¶ 27. He also claims that he never owned a clothesline, and that Friedman's issuance of the contraband receipt was merely a pretext for her to search and vandalize his cell. Dkt. No. 83 at 16. Such argument does not change the Court's analysis because the injuries alleged, however frustrating they may be, are de minimis.

Because the undersigned has determined that plaintiff has failed to show that he suffered an adverse action arising out of Friedman's actions on October 8, 2009, the undersigned need not determine whether there is a causal connection between plaintiff's protected conduct and Friedman's actions. Accordingly, there is no genuine issue of material fact as to Friedman's cell search and issuance of a contraband receipt on October

8, 2009, and it is recommended that defendants' motion on this ground be granted.

## 2. Leifeld

### a. October 20, 2009 Misbehavior Report

Plaintiff alleges that, on October 20, 2009, Leifeld issued to him a false misbehavior report stating that he found and confiscated a pair of stolen headphones from plaintiff's cell. Amended Compl. at 12. Plaintiff claims that Leifeld issued the false misbehavior report in retaliation for the grievances plaintiff had previously filed against officers Jamil and Friedman. Id. Leifeld states that, on October 20, 2009, plaintiff handed him a pair of broken headphones and stated that a corrections officer had broken them. Leifeld Decl. ¶ 5. Upon further investigation, Leifeld determined that the headphones plaintiff handed him were possessed illegally and issued plaintiff a misbehavior report for violating Standard of Inmate Behavior 116.13 (Possession of Stolen Property). Id. ¶¶ 6-12.[5]

Plaintiff meets the first prong of this First Amendment retaliation claim. See Graham, 89 F.3d at 80. The retaliatory conduct alleged by plaintiff is Leifeld's issuance of a false misbehavior report. Amended Compl. at 12. Plaintiff does not allege that he suffered any penalties or lost any privileges as a result of the misbehavior report. To the contrary, plaintiff provided a hearing disposition form stating that there was insufficient evidence to support the charge against him. Dkt. No. 83-1 at 52. The form also indicates that plaintiff

---

[5] Plaintiff requests that the Court preclude the defendants from offering any evidence regarding a contraband receipt issued by Leifeld on October 20, 2009. Dkt. No. 83 at 21. The Court has reviewed defendants' motion papers in detail and defendants do not contend that Leifeld issued a contraband receipt on this date, nor is a contraband receipt referenced anywhere in defendants' motion for summary judgment. As such, plaintiff's request is denied.

did not receive any penalties.  Id. at 51.  Because plaintiff cannot direct the Court to any penalty or injury he suffered as a result of the misbehavior report, he has not shown that he suffered an adverse action.  See Bartley v. Collins, No. 95 Civ. 10161 (RJH), 2006 WL 1289256, at *7 (S.D.N.Y. May 10, 2006) (finding no adverse action where misbehavior report resulted in a temporary loss of privileges).

Even if the Court were to find that plaintiff suffered an adverse action based on the misbehavior report, he has failed to demonstrate a causal connection between his protected activity and Leifeld's issuance of a misbehavior report.  Plaintiff claims that Leifeld retaliated against him for grievances he had previously filed against Officers Jamil and Friedman. Amended Compl. at 12.  As stated, where a prison official's only alleged motive for retaliatory conduct is grievances filed against other officers, it is difficult to establish retaliation.  See Wright, 554 F.3d at 274; Ciaprazi, 2005 WL 3531464, at *8-9 (entering summary judgment on retaliation claim where the plaintiff cited only past grievances filed against corrections officers other than the officer who disciplined the plaintiff).  Here, plaintiff's conclusory and speculative claims are insufficient to establish that Leifeld had a motive to retaliate against him for complaints filed against Jamil and Friedman.

Accordingly, there is no genuine issue of material fact as to Leifeld's alleged violation of plaintiff's First Amendment rights arising out of his issuance of the October 20, 2009 misbehavior report, and it is recommended that defendants' motion on this ground be granted.

### b.  December 27, 2009 Misbehavior Report

Plaintiff claims that defendants Leifeld and Geisler issued a false misbehavior report

on December 27, 2009 in retaliation for past grievances filed against defendant Leifeld and other corrections officers. Amended Compl. at 13.

The crux of plaintiff's retaliation claim against defendant Leifeld is that Leifeld ordered him to travel to a different part of Eastern without an institutional pass or an escort at a time where he would need one, thereby effectively forcing plaintiff to violate Eastern's regulations. Amended Compl. at 12-13. Plaintiff admits that he did not follow Geisler's direction and instead stopped to use the restroom while on his way to obtain an institutional pass. Dkt. No. 66-4 at 18 (Hickey Decl. Exh. A). Geisler found plaintiff in the shower area and issued a misbehavior report for violations of multiple Standards of Inmate Behavior, of which plaintiff was found guilty of only one: Standard of Inmate Behavior 106.10 (Direct Order). Leifeld Decl. ¶ 28. Plaintiff was also placed on keeplock status after Geisler escorted him back to his cell. Id. ¶ 26. If plaintiff disagreed with the order given, he "had the opportunity to exercise his First Amendment rights to criticize prison rules through other means than disobeying [the] direct order. . ." Cook, 1990 WL 303592, at *4 (finding no adverse action where the alleged retaliatory misbehavior report averred that the plaintiff disobeyed a direct order). Because the misbehavior report issued by Leifeld and Geisler was not false, by plaintiff's own admission, it is not an adverse action. Brewer v. Kamas, 533 F. Supp. 2d 318, 329 (W.D.N.Y. 2008) (finding that the plaintiff could not avoid summary judgment where he failed to establish that the misbehavior report issued to him was false).

Because plaintiff has failed to meet the second prong of his First Amendment retaliation claim against Leifeld regarding the December 27, 2009 misbehavior report, the undersigned need not reach the third prong in the analysis. Accordingly, there is no

genuine issue of material fact as to Leifeld's alleged violation of plaintiff's First Amendment rights as to the December 27, 2009 misbehavior report, and it is recommended that defendants' motion on this ground be granted.

### 4) Filkins

Plaintiff alleges that defendant Filkins subjected him to "harassment and retaliatory treatment" by filing a false misbehavior report against him. Amended Compl. at 15. Plaintiff claims that Filkins acted in retaliation for plaintiff's filing grievances against defendant Leifeld and other staff members. Id. at 14-15.

Plaintiff's filing of grievances against defendant Leifeld and other staff members at Eastern is constitutionally-protected conduct, and he therefore meets the first prong of his retaliation claim against Filkins. See Graham, 89 F.3d at 80.

Plaintiff claims that he suffered an adverse action by Filkins filing a false misbehavior report against him. Amended Compl. at 15. However, plaintiff fails to establish the second and third prongs of his retaliation claim, which requires him to show: (1) that he suffered an adverse action, and (2) a causal connection between the protected conduct and the adverse action, for two reasons. See Espinal, 558 F.3d at 128. Where an inmate pleads guilty to the charges against him, he has failed to establish any evidence that the charges brought against him are false. See Brewer, 533 F. Supp. 2d at 330 (granting summary judgment on retaliation claim where the plaintiff failed to set forth any evidence that the charges in the misbehavior report were false). Plaintiff pleaded guilty to violating Standard of Inmate Behavior 116.11, which prevents inmates from tampering with property. Filkins Decl. ¶ 15. As plaintiff has pleaded guilty to the conduct contained in the misbehavior

report, plaintiff has failed to set forth any evidence demonstrating that a false misbehavior report was issued, and, therefore, has failed to establish that he suffered an adverse action. As to the third prong, plaintiff claims that the reason behind Filkins' issuance of the allegedly false misbehavior report is plaintiff's filing of grievances against Leifeld and other Eastern staff members, not Filkins. Grievances filed against officers other than the disciplining officer, in most circumstances, do not establish the requisite causal connection between the protected conduct and the alleged adverse action. See Ciaprazi, 2005 WL 3531464, at *9 (entering summary judgment on retaliation claim where the plaintiff cited only past grievances filed against corrections officers other than the officer who disciplined the plaintiff). Because plaintiff has not provided any support for his claim that Filkins retaliated against him for his grievances against other officers, he has failed to show that there is a causal connection between his protected conduct and the misbehavior report.

Accordingly, there is no genuine issue of material fact as to Filkins' alleged violation of plaintiff's First Amendment rights as to the December 5, 2009 misbehavior report, and it is recommended that defendants' motion on this ground be granted.

### 5) Geisler

Plaintiff claims that defendant Geisler retaliated against him for grievances filed against defendant Leifeld and other staff members at Eastern by filing a false misbehavior report against him. Amended Compl. at 14.

Plaintiff meets the first prong of the analysis. See Graham, 89 F.3d at 80. Plaintiff alleges that Geisler performed an adverse action when he co-signed a misbehavior report with Leifeld . Amended Compl. at 14. As stated previously, the December 27, 2009

misbehavior report does not amount to an adverse action. See section II.2.b supra.
Plaintiff also fails to present a genuine issue of material fact as to a causal connection between his filing grievances and Geisler's co-signing of the misbehavior report. In order to prove this third prong, plaintiff must show that his prior filing of grievances was a "'substantial or motivating factor'" in Geisler's issuance of a misbehavior report. See Gayle v. Gonyea, 313 F.3d 677 (2d Cir. 2002), 682 (quoting Graham, 89 F.3d at 79). It is difficult to establish a causal connection where the prior grievances cited by plaintiff as protected conduct did not implicate Geisler. See Ciaprazi, 2005 WL 3531464, at *9. Here, plaintiff alleges that Geisler acted in retaliation for grievances filed against Leifeld and other staff members at Eastern. Amended Compl. at 14. However, plaintiff provided no evidence to suggest that Geisler knew of prior grievances filed against Leifeld or other officers, or that there was no legitimate reason for the filing of the misbehavior report. Further, plaintiff admitted during his deposition that he did not have any incidents or problems with Geisler prior to the December 27, 2009 incident. Dkt. No. 66-4 at 19. As such, he has failed to raise a genuine issue of fact as to a causal connection between the past grievances he filed and Geisler's co-signing of the December 27, 2009 misbehavior report. See Ciaprazi, 2005 WL 3531464, at *9.

Accordingly, there is no genuine issue of material fact as to Geisler's alleged violation of plaintiff's First Amendment rights in connection with the December 27, 2009 misbehavior report, and it is recommended that defendants' motion on this ground be granted.

## C. Allegations of Verbal Harassment and Threats

Plaintiff alleges that defendants Friedman and Filkins harassed and threatened him

in retaliation for filing grievances. Amended Compl. at 9, 15. Defendants argue that plaintiff's claims of verbal threats and harassment are not actionable. Dkt. No. 66-1 at 21.

Verbal harassment or threats are generally not considered adverse action for the purpose of a First Amendment retaliation claim. Marrero v. Kirkpatrick, No. 08-CV-6237 (MAT), 2012 WL 2685143, at *7 (W.D.N.Y. July 6, 2012) (citing Rosales v. Kikendall, 677 F. Supp. 2d 643, 648 (W.D.N.Y. 2010)) (additional citation omitted). Further, verbal harassment and threats are generally not considered conduct "'that would deter a similarly situation individual of ordinary firmness of exercising constitutional rights.'" Cabassa v. Smith, No. 9:08-CV-0480 (LEK/DEP), 2009 WL 1212495, at *7 (N.D.N.Y. Apr. 30, 2009) (citing Gill, 389 F.3d at 380) (additional citation omitted). However, verbal threats may constitute adverse action for purpose of a First Amendment retaliation if the threat is sufficiently specific. Barrington v. New York, 806 F. Supp. 2d 730, 746 (S.D.N.Y. 2011); see also Ford v. Palmer, 539 F. App'x 5, 5 (2d Cir. 2013) (summary order) (finding that a verbal threat constituted adverse action where corrections officer threatened to poison the plaintiff in retaliation for filing his grievances).

Here, Filkins allegedly stated to plaintiff on December 5, 2009, "you are a smart ass nigger, you think that you can go around and write officers up and nothing is going to happen to you, I don't think so we skin heads are not going to stand for it." Amended Compl. at 15. Such a statement is not sufficiently specific to constitute adverse action. See Bartley, 2006 WL 1289256, at *2-4 (finding no adverse action where a corrections officer tells a plaintiff that he is going to "get [him]" for filing a lawsuit); Alicea v. Howell, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) (finding no adverse action where a prison official told an inmate that he would "have to pay the consequences" for filing a grievance against her).

Friedman's statement is similar to Filkins' in that it lacks specificity.  On July 14,

2009, two weeks after plaintiff filed a grievance against her, Friedman allegedly called

plaintiff a racial slur, and stated, "I am going to make you wish you never wrote a grievance

on me."  Amended Compl. at 9.  This threat is also not sufficiently specific to establish

adverse action.  See Bartley, 2006 WL 1289256, at *2-4.

Accordingly, it is recommended that defendants' motion on this ground be granted.


### D.  Supervisor Liability

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 201 (2d

Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus,

supervisory officials may not be held liable merely because they held a position of authority.

Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may

be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged
> constitutional violation;
>
> (2) the defendant, after being informed of the violation through a
> report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance
> of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of
> inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319.

323-24 (2d Cir. 1986)).


### 1. Brown

Plaintiff claims that he sent multiple appeals and complaint letters to defendant

Brown regarding the actions of defendants Friedman, Leifeld, Geisler, and Filkins, and that

defendant Brown has failed to remedy the constitutional violations alleged in the appeals

and letters.  See Dkt. No. 38 at 19-21, 24, 26, 33.  Defendants argue that defendant Brown

was not personally involved in any of the constitutional violations alleged.  Dkt. No. 66-1 at

18.

Writing letters and grievances to a defendant is insufficient to establish notice and

personal involvement.  Smart v. Goord, 441 F. Supp. 2d 631, 643 (S.D.N.Y. 2006)

("Commissioner . . . cannot be held liable on the sole basis that he did not act in response

to letters of protest sent by [plaintiff] . . . .").  Further, where a plaintiff's sole accusation

against a superintendent is that the superintendent affirmed the denial of plaintiff's

grievance, it "is insufficient to establish personal involvement[.]"  Joyner v. Greiner, 195 F.

Supp. 2d 500, 506 (S.D.N.Y. 2002).  Also, it is within the purview of a superior officer to

delegate responsibility to others.  See Vega v. Artus, 610 F. Supp. 2d 185, 198 (N.D.N.Y.

2009) (finding no personal involvement where "the only involvement of the supervisory

official was to refer the inmate's complaint to the appropriate staff for investigation.") (citing

Ortiz-Rodriguez v. N.Y. State Dep't of Corr. Servs., 491 F. Supp. 2d 342, 347 (W.D.N.Y.

2007)).

Plaintiff alleges that his complaints regarding the July 1, 2009 and July 14, 2009

incidents with defendant Friedman were consolidated in an appeal sent to Brown on July 17, 2009. Dkt. No. 83 at 39. Brown responded to the appeals on August 13, 2009, finding the grievance to be without merit. Dkt. No. 83-1 at 93. Brown's affirmation of the denial of the grievance is insufficient to establish his personal involvement as to the July 1, 2009 and July 14, 2009 incidents. See Joyner, 195 F. Supp. 2d at 506. Plaintiff also alleges that he sent a letter of complaint regarding Friedman's actions on October 8, 2009 to Brown. Amended Compl. at 21-22. Brown acknowledges that he received the letter and "forwarded Plaintiff's complaint to appropriate subordinate staff for investigation." Brown Decl. ¶ 15, Exh. E. Because Brown only forwarded the complaint letter to subordinate staff for investigation, plaintiff has also failed to establish personal involvement for the October 8, 2009 incident. See Vega, 610 F. Supp. 2d at 198.

As to the October 20, 2009 incident with Leifeld, plaintiff claims that he sent a letter to Brown, and that Brown assigned Captain Pingotti, a non-party, to investigate the complaint. Amended Compl. at 25. Plaintiff also argues that defendant Brown has not responded to the complaint; however, this does not establish personal involvement. Brown cannot be found personally involved in the October 20, 2009 incident because he delegated investigation of that incident to a subordinate, as stated in plaintiff's complaint. See Vega, 610 F. Supp. 2d at 198.

As to the December 5, 2009 incident with defendant Filkins, plaintiff claims that he sent a grievance letter to Brown on December 6, 2009. Amended Compl. at 34. As discussed, Brown's personal involvement cannot be found from plaintiff's sending of a letter, without more. See Smart, 441 F. Supp. 2d at 643.

Finally, as to the December 27, 2009 incident regarding defendants Leifeld and

Geisler, plaintiff argues that he sent a grievance letter to Brown on December 29, 2009 and has not yet received a response. Brown produced, as an exhibit to his declaration, his response to plaintiff's appeal, which accused Leifeld of making false statements on the misbehavior report dated December 27, 2009. See Dkt. No. 66-18 at 1, 5-6. The response is dated January 7, 2010. Id. at 1. As stated previously, Brown cannot be found personally involved solely by his affirming a grievance determination, without more. See Joyner, 195 F. Supp. 2d at 506.

Plaintiff also states in his supplemental response that he spoke to Brown in February of 2010 "regarding the grievances filed in his office." Dkt. No. 83 at 37. Plaintiff also claims that Brown told plaintiff that he had spoken to defendant Fischer about "the retaliatory treatment" plaintiff was receiving and that plaintiff would be transferred to a new facility. Id. This conversation is also insufficient to establish personal involvement. See Rosales, 677 F. Supp. 2d at 651-52 (finding no personal involvement where the plaintiff had a conversation with a superintendent regarding alleged constitutional violations and the superintendent stated that he would "look into the matter" but did nothing further).

Accordingly, because Brown was not personally involved in any of the alleged constitutional violations, the defendants' motion on this ground should be granted.


## 2. Fischer

Plaintiff alleges that he sent Fischer multiple letters regarding incidents with defendants Friedman, Leifeld, Geisler, and Filkins. Amended Compl. at 42-53, 55-57. Defendants argue that Fischer was not personally involved in any of the constitutional violations alleged by plaintiff. Dkt. No. 66-1 at 18-20.

As stated, sending letters or grievances to a prison official, without more, is insufficient to establish the personal involvement of the prison official. Smart, 441 F. Supp. 2d at 643. Further, where an inmate alleges that he sent a letter to a prison official, and the prison official failed to investigate allegations of staff misconduct, the inmate must show more than merely reciting the fact that they sent a letter. See Colon, 58 F.3d at 873 (finding that an allegation that an inmate sent a letter to a superintendent is "insufficient to create a triable issue of fact[]" where plaintiff fails to specify the contents of the letter). "The bare fact that [the Commissioner] occupies a high position in the New York prison hierarchy is insufficient to sustain [a claim of supervisory liability]." Id. at 874.

Plaintiff claims that he sent multiple letters to Fischer, and alleges that Fischer responded to those letters. Specifically, plaintiff alleges that Fischer responded to the letters on September 23, 2009, February 17, 2010, and March 3, 2010. Amended Compl. at 44, 46, 56. Plaintiff fails to detail the contents of these letters. Defendant Fischer claims that, as Commissioner, he received thousands of letters each year, and relied upon secretaries to determine the particular division or bureau to which each letter should be forwarded. Declaration of Brian Fischer ("Fischer Decl.") ¶ 3. Fischer states that he received copies of letters plaintiff sent to defendant Brown, Superintendent of Eastern, on July 17, 2009 and November 3, 2009. Id. ¶ 6, 8, Exh. A, B. Deputy Commissioner Lucien Leclaire responded to each letter, on August 24, 2009 and November 12, 2009, advising plaintiff that he must participate in the grievance process at Eastern in order to resolve his complaints. Id. The only contact between plaintiff and Fischer are the letters plaintiff wrote to defendant Brown on which Fischer was copied, and the responses plaintiff received from Fischer's office. These contacts are insufficient to establish Fischer's personal involvement.

See Garvin v. Goord, 212 F. Supp. 2d 123, 126 (W.D.N.Y. 2002) (finding that the Commissioner was not personally involved where all letters sent by the plaintiff were reviewed by staff and forwarded to a subordinate staff member for investigation and response).

Accordingly, because Fischer was not personally involved in any of the alleged constitutional violations, defendants' motion on this ground should be granted.

## E.  Qualified Immunity

Defendants contend that they are all entitled to qualified immunity.  Dkt. No. 66-1 at 22.  The doctrine of qualified immunity is an affirmative defense which "shield[s] an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."  Pearson v. Callahan, 555 U.S. 223, 244 (2009).  Even if a disciplinary disposition is not supported by "some evidence," prison officials are entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Luna, 356 F.3d at 490 (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999)) (internal quotation marks omitted).  This assessment is made "'in light of the legal rules that were clearly established at the time [the official's action] was taken.'"  Wilson, 526 U.S. at 614 (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987) (internal quotation marks omitted); Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991).  To determine whether a state official is entitled to qualified immunity for acts taken during the course of his or her employment, a reviewing court is to determine: "(1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly

established, whether it was objectively reasonable for the [official] to believe the conduct at issue was lawful." Phillips v. Wright, 553 F. App'x 16, 17 (2d Cir. 2014) (citing Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013)).

Here, plaintiff has failed to demonstrate a constitutional violation as to any defendant, and, therefore, has failed to meet the first prong. Phillips, 553 F. App'x at 17. As to the second prong, inmates possess a clearly-established right to engage in the grievance process without fear of retaliation from prison officials. Baskerville v. Blot, 224 F. Supp. 2d 723, 738 (S.D.N.Y. 2002) (citing Franco v. Kelly, 854 F.2d 584 (2d Cir. 1988)). However, for the reasons established in the sections above, it was objectively reasonable for defendants to act as they did in disciplining plaintiff, confiscating contraband, and searching his cell. See sections B-D, supra. The misbehavior reports that plaintiff received were issued because defendants observed plaintiff violating one or more Standards of Inmate Behavior Rules. Similarly, the cell searches and subsequent confiscations were performed because defendants observed contraband in plaintiff's cell. For the reasons stated in the previous sections, defendants Friedman, Leifeld, Filkins, Geisler, Brown and Fischer are entitled to qualified immunity because they have shown that it was objectively reasonable to believe that they did not violate plaintiff's rights. See Hathaway v. Coughlin, 37 F.3d 63, 69 (2d Cir. 1994).

Accordingly, defendants Friedman, Leifeld, Geisler, Filkins, Brown, and Fischer are entitled to qualified immunity, and it is alternatively recommended that defendants' motion on this ground be granted.

## IV. Conclusion

For the reasons stated above, it is hereby:

**RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 66) be

**GRANTED** in all respects as to all claims and defendants; and it is further

**ORDERED** that plaintiff's requests to preclude evidence of (1) any statement by

defendant Friedman alleging that plaintiff disobeyed a direct order to turn his radio

off, and (2) any contraband receipt issued to plaintiff by defendant Leifeld on

December 5, 2009 for the seizure of headphones are **DENIED**; and it is further

**ORDERED** that the Clerk serve a copy of this Report-Recommendation and Order on

the parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the

foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE**

**APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y

of HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a),

6(e).


DATED:     August 13, 2015
           Albany, New York

Christian F. Hummel
U.S. Magistrate Judge